IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 9, 2003

**STATE OF TENNESSEE v. JEFFERY P. BECKHAM**

**Direct Appeal from the Circuit Court for Hardin County**
**No. 8138     C. Creed McGinley, Judge**

**No. W2002-02444-CCA-R3-CD  - Filed September 29, 2003**

A Hardin County jury convicted the defendant, Jeffery P. Beckham, of aggravated assault. The trial
court sentenced him to five years incarceration as a Range I standard offender.  On appeal, the
defendant contends (1) the evidence is insufficient to support the conviction; (2) his sentence is
excessive; and (3) the trial court erred in denying probation.  We affirm the judgment of the trial
court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JERRY L.
SMITH, J., joined.

Guy T. Wilkinson, District Public Defender; and Richard W. DeBerry, Assistant District Public
Defender, for the appellant, Jeffery P. Beckham.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General;
G. Robert Radford, District Attorney General; and John W. Overton, Jr., Assistant District Attorney
General, for the appellee, State of Tennessee.

**OPINION**

        The defendant was convicted of aggravated assault for pointing a shotgun at Jamie Davis on
August 31, 2001.  Mr. Davis testified that as he was driving out of the parking lot of the Oil Express,
located near K&M Market in Hardin County, Tennessee, he observed the defendant, his former
brother-in-law, gesture toward him with his middle finger.  Mr. Davis' pregnant wife and their two-
year-old daughter were passengers inside his vehicle.  Mr. Davis rolled down his window and asked
the defendant "what his problem was."  He stated he was unable to hear the defendant's response
because the defendant's radio was loud.

        Mr. Davis testified the defendant then walked to the bed of his pickup truck and retrieved
either a shotgun or a rifle from his toolbox.  The defendant placed the gun on his shoulder and aimed
it toward Mr. Davis.  Mr. Davis stated he was frightened and believed the defendant was going to
shoot him.  Mr. Davis testified he then drove to City Hall and reported the incident to the police.

Dina Davis, the victim's wife, testified that while she, her husband, and their daughter were exiting the parking lot, she observed the defendant gesture toward her husband with his middle finger. Her husband then rolled down his window and questioned the defendant regarding his reason for making the gesture. Mrs. Davis stated the defendant was "mouthing," but she was unable to hear what he said.

Mrs. Davis testified the defendant retrieved a gun from his toolbox in the bed of his truck. The defendant placed the gun on his shoulder and aimed it toward her husband. Mrs. Davis stated she was a "nervous wreck," and she pushed her daughter down in her car seat, while she ducked down in her seat. She further stated that as they were driving away, she looked out of the window and observed the defendant continuing to point the gun at them.

Officer Kenneth Thompson of the Savannah Police Department testified that after Mr. Davis reported the incident to him, he attempted to locate the defendant. The officer stated he observed the defendant's vehicle parked at Bobby Beckham's garage located near K&M Market. The officer then observed the defendant coming from the building while holding a gun. Officer Thompson drew his gun on the defendant and ordered him to lay down his weapon. The defendant complied and held up his arms.

Officer Thompson stated the gun in the defendant's possession was a Mossberg twelve-gauge shotgun which was loaded with four rounds, including one round in the chamber. The officer testified that when he questioned the defendant regarding his reason for possessing the loaded weapon, the defendant stated he planned to sell the gun.

Bobby Beckham, the defendant's cousin and owner of Beckham's Garage, testified he observed the defendant at the garage in possession of the gun. He stated that people occasionally sold and purchased guns at the garage.

The defendant testified that on the day of the incident, he had just returned from a hunting trip and was planning to sell his shotgun. He stated that while he was getting gasoline, Mr. Davis drove up and began cursing at him. The defendant testified he may have opened his tool box and retrieved the shotgun. He denied pointing the shotgun at Mr. Davis. The defendant stated that upon returning from the hunting trip, he had unloaded his shotgun and reloaded it after Mr. Davis left.

The jury convicted the defendant of aggravated assault as charged in the indictment, and the trial court sentenced him to five years incarceration as a Range I standard offender.

## I. SUFFICIENCY

The defendant contends the evidence is insufficient to support his conviction for aggravated assault. We disagree.

## A. Standard of Review

When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). Nor may this court reweigh or re-evaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the state is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Butler, 108 S.W.3d 845, 848 (Tenn. 2003). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

## B. Analysis

As applicable to the case at bar, a person commits aggravated assault when he or she "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury" through the use or display of a deadly weapon. Tenn. Code Ann. §§ 39-13-101(a)(2), -102(a)(1)(B).

Both Mr. Davis and his wife testified the defendant retrieved a gun from his toolbox and aimed it at Mr. Davis. Mr. Davis stated he was frightened and believed the defendant planned to shoot him. Officer Thompson testified he retrieved a loaded Mossberg twelve-gauge shotgun from the defendant's possession a short time after the incident occurred. Although the defendant testified he did not load the shotgun until after Mr. Davis left the scene, the jury could reject this testimony. Further, no proof was presented indicating Mr. Davis knew the firearm was unloaded. *See* State v. Moore, 77 S.W.3d 132, 136 n.6 (Tenn. 2002) (noting an individual may cause fear of imminent bodily injury through the display of an unloaded firearm). The defendant maintains he did not aim his shotgun at Mr. Davis and merely intended to sell the gun. However, this argument involves the credibility of the witnesses, which is within the purview of the jury as the sole trier of fact. Therefore, we conclude this evidence is sufficient to support the aggravated assault conviction.

## II. SENTENCING

The defendant contends the length of his sentence is excessive, and the trial court erred in ordering him to serve his sentence in confinement. We disagree.

## A. Trial Court's Findings

The trial court properly noted the defendant was convicted of intentional aggravated assault, a Class C felony, which carries a sentencing range of three to six years as a Range I standard offender. *See* Tenn. Code Ann. §§ 39-13-102(d), 40-35-112(a)(3). The trial court applied enhancement factor (2), previous history of criminal convictions or behavior, to the defendant's sentence. *See id.* § 40-

35-114(2) (Supp. 2002). The presentence report shows the defendant had numerous misdemeanor convictions, including reckless endangerment, which involved a deadly weapon; domestic assault; three DUI's; and three driving on a revoked license. The trial court also applied mitigating factor (13), "[a]ny other factor consistent with the purposes of this chapter," due to the defendant's good educational record. *See id.* § 40-35-113(13). The court placed great weight on enhancement factor (2) and imposed a five-year sentence.

The trial court noted that because the defendant was convicted of a Class C felony, he was presumptively eligible for alternative sentencing. The court found this presumption had been overcome due to the defendant's prior criminal record involving violence. It noted that if probation were granted, the victim's safety would be at risk. The trial court then ordered the defendant to serve his sentence in confinement.

## B. Standard of Review

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). It is this court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct when a defendant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999).

## C. Length of Sentence

The defendant submits the trial court failed to properly weigh the applicable enhancing and mitigating factors in imposing the five-year sentence. The weight given to each enhancement or mitigating factor is in the discretion of the trial court, assuming the trial court has complied with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Madden, 99 S.W.3d 127, 138 (Tenn. Crim. App. 2002). A defendant's sentence is not determined by the mathematical process in which the sum total of applicable enhancement factors are added and then the applicable mitigating factors are subtracted, thereby yielding a net number of years. State v. Alder, 71 S.W.3d 299, 306 (Tenn. Crim. App. 2001) (citing State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996)).

The defendant was convicted of aggravated assault, a Class C felony, with a sentencing range of three to six years as a Range I standard offender. *See* Tenn. Code Ann. §§ 39-13-102(d), 40-35-112(a)(3). The presumptive sentence for a Class C felony is the minimum sentence in the range if no enhancing or mitigating factors apply. *Id.* § 40-35-210(c). However, if enhancing and mitigating factors apply, the trial court must begin at the minimum sentence in the range, enhance the sentence within the range upon considering the applicable enhancement factors, and then reduce the sentence within the range upon considering the applicable mitigating factors. *Id.* at (e).

In the case at bar, the trial court placed great weight on enhancement factor (2), prior history of criminal conduct, in imposing the sentence. *See id.* § 40-35-114(2) (Supp. 2002). The trial court then considered the defendant's educational history as a mitigating factor. *See id.* § 40-35-113(13). Based upon the great weight placed upon enhancement factor (2), we conclude the trial court did not err in imposing a five-year sentence.

We further note the trial court could have properly applied enhancement factor (9), "previous history of unwillingness to comply with the conditions of a sentence involving release in the community," as the presentence report reflects that the defendant was arrested and convicted of reckless endangerment while on probation for an assault conviction. *See id.* § 40-35-114(9) (Supp. 2002). Finally, enhancement factor (11), high risk to human life, was applicable because the victim's wife and child were also subjected to a high risk to their lives as a result of the defendant's pointing a loaded twelve-gauge shotgun toward them. *See id.* at (11); *see also* State v. Imfeld, 70 S.W.3d 698, 707 (Tenn. 2002) (noting that the "risk to human life" enhancement factor is applicable where individuals other than the named victim are also endangered). Regardless, we conclude the trial court properly imposed a five-year sentence.

## D. Probation

The defendant asserts the trial court erred in denying probation. Again, we disagree.

### 1. Standard of Review

A defendant is eligible for probation if the sentence received by the defendant is eight years or less, subject to some statutory exclusions. Tenn. Code Ann. § 40-35-303(a). An especially mitigated or standard offender convicted of a Class C felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. *Id.* § 40-35-102(6). However, although a defendant may be presumed to be a favorable candidate for alternative sentencing, the defendant has the burden of establishing suitability for total probation. *Id.* § 40-35-303(b); Boggs, 932 S.W.2d at 477. Even though probation must be automatically considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b), Sentencing Commission Comments; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). A defendant seeking full probation bears the burden on appeal of showing the sentence imposed is improper, and that full probation will be in the best interest of the defendant and the public. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

Under the 1989 Sentencing Act, sentences which involve confinement are to be based on the following considerations contained in Tennessee Code Annotated section 40-35-103(1):

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

State v. Grigsby, 957 S.W.2d 541, 545 (Tenn. Crim. App. 1997); State v. Millsaps, 920 S.W.2d 267, 270 (Tenn. Crim. App. 1995).

## 2. Analysis

As a Range I standard offender convicted of intentional aggravated assault, a Class C felony, the defendant is presumed to be a favorable candidate for alternative sentencing. *See* Tenn. Code Ann. § 40-35-102(6). However, confinement is appropriate due to the defendant's long history of criminal conduct. *See id.* § 40-35-103(1)(A). According to the presentence report, the defendant has numerous prior misdemeanor offenses. Furthermore, measures less restrictive than confinement have been frequently and unsuccessfully applied to the defendant. *See id.* § 40-35-103(1)(C). The defendant has been placed on probation for each of his prior convictions; yet, he continues to commit new offenses. According to the presentence report, the defendant was arrested and convicted of reckless endangerment while on probation for an assault conviction. In addition, after his arrest for the present offense, the defendant was arrested and convicted of driving on a revoked license. Based upon these circumstances, we conclude the trial court properly ordered the defendant to serve his five-year sentence in confinement.

Accordingly, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE